*E-FILED: March 21, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHILIP B. SCOTT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EDGAR LOPEZ,<br><br>　　　　Defendant. | No. C12-01456 HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE FORUM SELECTION CLAUSE**<br><br>[Re: Docket No. 6] |

In this diversity action, plaintiff Philip B. Scott, a California resident, seeks redress for alleged fraud and breach of fiduciary duty. Defendant Edgar Lopez, who lives in New Mexico, moves to dismiss for lack of personal jurisdiction and improper venue. Lopez contends that a forum selection clause in an agreement between the parties requires this case to be litigated in New Mexico. Plaintiff opposes the motion. Upon consideration of the moving and responding papers, the parties' respective supplemental briefs, as well as the arguments of counsel, this court concludes that, even if jurisdiction properly could be exercised over Lopez here, the parties' forum selection clause should be enforced.[1]

---

[1] All parties have expressly consented that proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); FED. R. CIV. P. 73.

# BACKGROUND

According to the complaint, in 1993 Lopez formed Amador Associates, LLC (Amador Associates), a New Mexico limited liability company.[2] The only members of Amador Associates are Scott and Lopez, who each own 50% interest in the company. Lopez is the managing member. The Amador Associates Operating Agreement contains a forum selection clause that provides:

> G. Applicable Law
>
> This agreement shall be governed by and construed in accordance with the laws of the State of New Mexico. Any action concerning the interpretation or administration of this Agreement or any other matter concerning the Members with respect to the Company shall be brought in Dona Ana County, New Mexico.

(Dkt. No. 6, Lopez Decl., Ex. A (Operating Agreement, Section XIII, G)).

The complaint further alleges that in 1995, Lopez formed Garfield, LLC (Garfield), an Indiana limited liability company. Amador Associates owns 98% interest in Garfield. Lopez, Garfield's managing member, owns a 2% interest.

Plaintiff alleges that on or about July 10, 2006, Lopez, in his capacity as Garfield's managing member, executed a promissory note in connection with Garfield's purchase of real property in Marion County, Indiana. The note was executed in favor of Bond Street Capital Corp. (Bond Street), a California corporation, for $1,350,000. (Complaint ¶ 8, Ex. A). As security for the note, Lopez executed an "Unconditional Guaranty of Payment." (Id., ¶ 9, Ex. B). And, as further security for the note, the complaint alleges that Lopez forged Scott's signature on an "Unconditional Guaranty of Payment" (Scott Guaranty). (Id. ¶ 10, Ex. C). Plaintiff says that he did not know about the Scott Guaranty and that Lopez did not have his permission to sign his name to that document. The promissory note reportedly was also secured by a "Real Estate Mortgage, Security Agreement and Assignment of Leases, and Fixture Filing" executed by Lopez on Garfield's behalf and recorded in Marion County, Indiana.

---

[2] Amador Associates originally was formed under the name Amador Associates Ltd. Co.

1    Plaintiff says that several years later, on January 15, 2010, Bond Street endorsed an
2 Allonge to Note, making the note payable to Bond Street's successor-in-interest, Presidential
3 Bank, FSB (Presidential).

4    The complaint goes on to allege that Garfield subsequently defaulted on the note.
5 Presidential then sued Garfield, Lopez, and Scott in Indiana state court.  Presidential also sought
6 a decree of foreclosure with respect to the Indiana property and a receiver was appointed to
7 collect rents from the property pursuant to the Security Agreement and Assignment of Leases.

8    Scott says that Lopez was served with summons in the Indiana action; and, Lopez
9 reportedly hired attorney Herbert Jensen to represent himself, Garfield, and Scott.  Plaintiff
10 alleges that he was never served with a copy of the summons and complaint.  And, he claims
11 that neither Lopez nor Jensen ever contacted him about the suit.

12    According to the complaint, Presidential obtained summary judgment against Garfield,
13 Lopez and Scott in the amount of $1,538,916.76 (plus 8% interest per annum).  Presidential was
14 also permitted to foreclose on the subject property.  Scott says that he was never made aware of
15 the summary judgment proceedings by either Lopez or Jensen.

16    Plaintiff says that after judgment was entered, the Indiana property was sold at a
17 sheriff's sale.  Accounting for the proceeds from that sale, the amount of the judgment against
18 Garfield, Lopez, and Scott was reduced to $418,201.38, plus 8% interest per annum.

19    Presidential then sought entry of a sister-state judgment against Lopez in New Mexico.
20 Lopez, however, allegedly paid nothing toward satisfaction of the judgment.

21    On January 14, 2011, Presidential filed a Notice of Entry of Judgment on Sister-State
22 Judgment against Scott in the California Superior Court for Santa Clara County.  (Complaint ¶
23 17, Ex. E).  Scott was served with that notice shortly afterward—and he says that is the first
24 time he was made aware that a judgment had been entered against him in Indiana.  Scott's
25 motion to vacate the sister-state judgment was denied.  Plaintiff says that he paid Presidential
26 $451,189.10, thereby satisfying the entire judgment against him, Lopez, and Garfield.

27    Scott filed the instant lawsuit, invoking the court's diversity jurisdiction under 28 U.S.C.
28 § 1332, and asserting five claims for relief:   (1) financial elder abuse; (2) deceit and fraud;

3

1  (3) breach of fiduciary duty of Garfield, LLC; (4) breach of fiduciary duty of Amador Associates; and (5) contribution.[3]  Claims 1, 2, 3, and 5 stem from Lopez's alleged misdeeds in connection with the Indiana property.  In Claim 4, plaintiff alleges that Lopez unilaterally, and without Scott's knowledge or consent, transferred title in real property owned by Amador Associates to other entities in which Scott has no interest, and in which Lopez is the sole member, majority member, or managing member.

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), Lopez moves to dismiss the complaint for lack of personal jurisdiction and improper venue.  For the reasons discussed below, even if this court properly could exercise jurisdiction over Lopez, the court concludes that the parties' forum selection clause should be enforced and that this matter should be transferred to New Mexico.

## DISCUSSION

A motion to enforce a forum selection clause is treated as a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue.  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  In such motions, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings.  Id.  Where there are contested facts bearing on the impact of a forum selection clause, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

As discussed above, the forum selection clause at issue provides:

> G.   Applicable Law
>
> This agreement shall be governed by and construed in accordance with the laws of the State of New Mexico.  Any action concerning the interpretation or administration of this Agreement or any other matter concerning the Members with respect to the Company shall be brought in Dona Ana County, New Mexico.

(Lopez Decl., Ex. A (Operating Agreement, Section XIII, G)).

---

[3] This court is told that Scott also filed a malpractice action against Jensen in Indiana.

4

1    Plaintiff argues that the forum selection clause only applies to matters that *directly*
2 concern Amador Associates. He acknowledges, as he must, that his fourth claim for relief
3 directly concerns the company. But he contends that his other claims do not, and therefore, do
4 not fall within the scope of the clause.

5    Federal law applies to the interpretation of a forum selection clause, and courts look to
6 general principles of contract interpretation for guidance. Manetti-Farrow, Inc. v. Gucci
7 America, Inc., 858 F.2d 509, 514 (9th Cir. 1988). "Contract terms are to be given their ordinary
8 meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained
9 from the contract itself. Whenever possible, the plain language of the contract should be
10 considered first." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th
11 Cir. 1999). "That the parties dispute a contract's meaning does not render the contract
12 ambiguous; a contract is ambiguous if reasonable people could find its terms susceptible to
13 more than one interpretation." Id.

14    Scott argues that the terms "concerning" and "with respect to" in the forum selection
15 clause should be interpreted to mean "directly relating to." He says that the forum selection
16 clause therefore is properly construed as covering "[a]ny action [directly relating to] the
17 interpretation or administration of this Agreement or any other matter [directly relating to] the
18 Members with respect to the Company." Scott, however, offers nothing to support this
19 interpretation of the clause, except to say that it is one he likes and believes is reasonable.

20    Analogous cases concerning the interpretation of arbitration clauses suggest that the
21 forum selection clause is subject to a broader interpretation than the one urged by plaintiff.
22 Courts have held that clauses using the terms "arising under," "arising out of," and "arising
23 hereunder" are to be "interpreted narrowly" to cover only those disputes "relating to the
24 interpretation and performance of the contract itself." Cape Flattery Limited v. Titan Maritime,
25 LLC, 647 F.3d 914, 922 (9th Cir. 2011). By contrast, clauses using the phrase "relating to"
26 indicate that the scope of the clause is subject to broader interpretation. Id.; cf. Mediterranean
27 Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1463-64 (9th Cir. 1983) (explaining that the
28 omission of the phrase "relating to" in an arbitration clause results in a narrower scope of

5

1 covered disputes). Here, the forum selection clause plainly states that it covers not only "[a]ny
2 action concerning the interpretation or administration of this Agreement," but also "any other
3 matter concerning the Members with respect to the Company." (Lopez Decl., Ex. A (Operating
4 Agreement, Section XIII, G)). The terms "concerning" and "with respect to" in the forum
5 selection clause are the substantial equivalent of the phrase "relating to." Moreover, all of
6 Scott's claims concern Lopez's alleged fraud and mismanagement of property owned outright
7 by Amador Associates or by Garfield (in which Amador Associates holds a 98% interest). The
8 forum selection clause applies to all of plaintiff's claims.

Scott nevertheless maintains that the forum selection clause should not be enforced. "Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" Manetti-Farrow, Inc., 858 F.2d at 514 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L.Ed.2d 513 (19872)). There are three reasons that would make enforcement of a forum selection clause unreasonable: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" Murphy, 362 F.3d at 1140 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998)). The party challenging the clause bears a heavy burden of proof. Id. (citing The Bremen, 407 U.S. at 15, 92 S. Ct. 1907).

Enforcing the forum selection clause, says Scott, would contravene California's public policy of protecting elders against financial abuse under the Elder Abuse Act (Cal. Wel. & Inst. Code § 15610, et seq.). He says that this is so because New Mexico does not have a comparable statute.[4] Simply pointing out that one state has a law that another might not, or that one state's law is more favorable than another's, is not enough to satisfy plaintiff's heavy

---

[4] Lopez says that New Mexico has laws designed to protect the elderly. For the reasons discussed above, the court does not find it necessary to engage in a comparative analysis of California's laws and those of New Mexico.

6

burden of proof. Otherwise, "forum selection clauses would be largely meaningless as it would depend on who filed first and whether that forum's law was more favorable to them." Swenson v. T-Mobile USA, Inc., 415 F. Supp.2d 1101, 1105 (C.D. Cal. 2006). And, the loss of a claim, by itself, is not a sufficient reason to void a forum selection clause on public policy grounds. See, e.g., Fireman's Fund Ins. Co. v. M.V. DSR Atlantic, 131 F.3d 1336, 1338 (9th Cir. 1997) ("Although litigating in Korea will deprive [plaintiff] of its right to proceed in rem against The Atlantic, the loss of that right is insufficient to invalidate the forum selection clause on public policy grounds."); Besag v. Custom Decorators, Inc., No. C08-05463 JSW, 2009 WL 330934 at *4 (N.D. Cal., Feb. 10, 2009) (stating that the loss of a claim, alone, is insufficient to invalidate a forum selection clause).

Instead, Scott must demonstrate that the public policy underlying California's Elder Abuse Act relates to venue. Swenson, 415 F. Supp.2d at 1105; Besag, 2009 WL 330934 at *4. So, for example, the Ninth Circuit has held that enforcement of a forum selection clause in a franchise agreement restricting venue to Pennsylvania courts violated public policy because California's Business & Professions Code expressly voids forum selection clauses in franchise agreements. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 497-98 (9th Cir. 2000). Similarly, in Doe v. AOL LLC, a putative class action suit, the clause designating Virginia state courts as the forum for dispute resolution was deemed contrary to California's public policy against waivers of class action rights and remedies under the California Consumer Legal Remedies Act because the Virginia state courts were procedurally incapable of entertaining class actions. 552 F.3d 1077, 1083-84 (9th Cir. 2009).

Scott points to no such venue-related restrictions or public policies in California's Elder Abuse Act. His citation to Bickel v. Sunrise Assisted Living, 206 Cal. App.4th 1, 141 Cal. Rptr.3d 586 (2012) does not help him. In Bickel, the plaintiff (a resident of an assisted living facility) sued the facility under the Elder Abuse Act. The facility filed a petition for arbitration, based upon an arbitration clause in the parties' agreement. The petition was granted, but the court severed the contractual provision that each party would bear its own fees and costs, finding that it was contrary to the public policy expressed in the Elder Abuse Act of allowing

7

the recovery of attorney's fees and costs in order to encourage attorneys to represent elders who have been abused or neglected. Id. at 12-13. Scott has not demonstrated that this public policy relates in any way to venue. See Besag, 2009 WL 330934 at *4 ("Thus, simply because [another state] ostensibly provides less favorable remedies compared with California is not sufficient in and of itself to invalidate the forum selection clause."). Moreover, the remedies sought by plaintiff's elder abuse claim are, for the most part, the same as those sought by his others, i.e., money damages for his satisfaction of the Indiana judgment.

Finally, Scott contends that litigating in New Mexico would be inconvenient because he is an octogenarian and would have to travel. This matter, however, is not before this court on a *forum non conveniens* motion. And, "[t]he Supreme Court has distinguished the inconvenience necessary to establish unreasonableness of a forum selection clause and the balancing of convenience test appropriate in a change of venue or *forum non conveniens* motion." Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 281 (9th Cir. 1984). There is no indication that Scott is infirm, disabled, or otherwise unable to travel. And, the inconvenience of travel does not, by itself, "equate to the plaintiff being denied a meaningful day in court." Besag, 2009 WL 330934 at *4. See also Pelleport Investors, Inc., 741 F.2d at 281 (rejecting the inconvenience of travel as a basis for avoiding a forum selection clause).

Accordingly, the court concludes that Scott has not met his burden of showing that the forum selection clause is unreasonable. The clause will therefore be enforced. Rather than dismiss this action, the court will transfer it to the District of New Mexico.

ORDER

Based on the foregoing, the court grants Lopez's Fed. R. Civ. P. 12(b)(3) motion to enforce the forum selection clause. This matter is transferred to the District of New Mexico. The clerk shall transfer this matter there and close this file.

SO ORDERED.

Dated: March 21, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

8

5:12-cv-01456-HRL Notice has been electronically mailed to:

Joshua A Allison    jaa@sheehansheehan.com, dmr@sheehansheehan.com

Julie Elaine Bonnel-Rogers    jer@millermorton.com, jmh@millermorton.com

Lindsey Elizabeth Martinez    lmartinez@swlaw.com, tmartin@swlaw.com

Sean M. Sherlock    ssherlock@swlaw.com, wmerkle@swlaw.com

Stevan Chazen Adelman    sca@millermorton.com, clk@millermorton.com